HUDSON VALLEY FREEDOM
THEATRE, INC., Plaintiff,

v.

Louis HEIMBACH, individually and as the
Orange County Executive; Peter Replo-
gle, individually and as the Director of
the Orange County Employment and
Training Administration; June Cook,
individually and as former Director of
the Orange County Employment and
Training Administration; Lawrence
Gaskins, individually and as an employ-
ee of the Orange County Employment
and Training Administration; and the
County of Orange, Defendants.

No. 80 Civ. 5914–CLB.

United States District Court,
S. D. New York.

May 5, 1981.

William M. Kunstler, Center for Constitutional Rights, C. Vernon Mason, James Meyerson, New York City (of counsel), N. A. A. C. P., for plaintiff.

Herbert Dicker and James Fischer of Wilson, Elser, Edelman & Dicker, New York City, for defendants.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

In this action, plaintiff Hudson Valley Freedom Theatre, Inc. ("HVFT"), a not-for-profit, tax-exempt organization located at Newburgh, New York, seeks compensatory and punitive damages, as well as injunctive relief. By motion docketed November 13, 1980 and fully submitted on February 24, 1981, defendants other than Cook moved to dismiss the various claims pleaded as against all defendants for want of subject matter jurisdiction, failure to state a claim, and as time barred. Affidavits have been received and considered, together with all matters presented to the Court in a prior motion for a preliminary injunction. There are no disputed issues of fact which need be reached to resolve the motion, which is granted for the reasons stated below.

Plaintiff produces theatrical and artistic productions in Orange County and the mid-Hudson area, which it characterizes as "particularly reach[ing] and involv[ing] the Black and Hispanic communities." Plaintiff's purpose for incorporating "was to create a theatre which would reflect the cultural needs, aspirations and creativity of the Black and Hispanic communities of the mid-Hudson area."

Defendant Louis Heimbach is the County Executive of Orange County who is responsible for that County's application for and administration of all funds allocated to Orange County under the Comprehensive Employment and Training Act, 29 U.S.C. § 801 *et seq.* ("CETA"). Defendant Peter Replogle is the current Director of the Employment and Training Administration of Orange County, New York ("ETA"), the county agency responsible for administration of its CETA program. Defendant June Cook was the Director of ETA when the claims in this case allegedly arose in January and February 1978. Defendant Lawrence Gaskins is an employee of ETA. The County of Orange is also named as a defendant.

Plaintiff corporation claims that defendants have deprived it of its rights in violation of the due process and equal protection clauses of the Fifth and Fourteenth Amendments, and in violation of 42 U.S.C. §§ 1981, 1983, 1985 and 2000d, by denying on account of race its application for CETA funds for a "theatre arts" project, and by terminating CETA funding on account of race for two positions in HVFT. Plaintiff also claims that in so doing, defendants have violated CETA. Finally, plaintiff claims that defendant June Cook violated 26 U.S.C. §§ 7217 and 6103 by disclosing to the public that HVFT had failed to remit its third quarter 1978 withholding taxes to the Internal Revenue Service.

Subject matter jurisdiction in this Court is premised on 28 U.S.C. §§ 1331, 1343(1), (3) and (4), on 26 U.S.C. § 7217, and on the doctrine of pendent jurisdiction.

In support of its claims, plaintiff alleges and we assume the facts set forth below. In June 1977, the Orange County ETA

granted plaintiff's application to be a subcontractor or subgrantee of CETA funds in the amount of $111,150.00. Plaintiff was to use the grant in a project for the physical restoration of the Dutch Reformed Church building in Newburgh, New York. In February 1978, however, plaintiff was informed by June Cook, then newly appointed as Director of the Orange County ETA, that the CETA job of "restoration trainee" in the church restoration project was to be abolished.

June Cook also informed HVFT in February 1978 that two Title II Public Employment positions "which the HVFT had were to be abolished by ETA due to lack of funds." In addition, it is alleged that two ETA youth programs which had been approved for HVFT as contractor in November 1977, and which were scheduled to begin in January 1978, were "inordinately delayed," with the reason given by ETA that "June Cook wanted verification that the HVFT was a 'community-based organization qualified to receive these grants.'" Because of this delay, one of HVFT's youth programs had to be cancelled.

The complaint also alleges that an application for $188,008.80 in CETA funds which was submitted by HVFT to the Orange County ETA in the Summer of 1978 was improperly denied. The application was entitled "Expansion of the Theatre Arts Industry Within the Greater Newburgh Community." Plaintiff alleges that in making a recommendation whether to accept this application, defendant Lawrence Gaskins, at the direction of June Cook, made "biased and perjurative (sic) comments" on the rating form, and that because of these comments the application was denied.[1] In July 1978 Curt Stewart, President and Artistic Director of HVFT, complained to the United States Department of Labor about claimed racial discrimination by the Orange County ETA. Mr. Stewart complained to the Department of Labor again in November 1978, mentioning particularly the denial

of funding for HVFT's Theatre Arts project. In late 1978 and early 1979 the Department of Labor investigated these allegations, conducting an "overall Equal Employment Compliance Review" of the Orange County CETA program, simultaneously with its consideration of Mr. Stewart's complaint. Mr. James A. Ware, the Regional Administrator for Region II of the United States Department of Labor's ETA, informed Mr. Stewart by letter in July 1979 that the investigation had not substantiated HVFT's allegations of racial discrimination, but did direct that the two abolished PSE positions in complainant's workforce should be "immediately restored". Mr. Ware proposed that HVFT be allowed to resubmit its theatre arts project application or a substitute as a remedy because his investigation had found that the project had been improperly evaluated. HVFT wrote to Mr. Ware stating that these suggested remedies were inadequate; HVFT requested that it be awarded damages instead. Mr. Ware informed the HVFT that the Department of Labor does not award damages in such situations.

Plaintiff also alleges that in December 1978 at a public session of the ETA Advisory Council, June Cook stated that HVFT had not paid its third quarter withholding taxes to the Internal Revenue Service. Finally, plaintiff alleges that during the Spring and early Summer of 1978 June Cook made a number of derogatory comments about HVFT and Curtis Stewart. Ms. Cook allegedly criticized HVFT privately and publicly by stating that the HVFT "did not have non-CETA personnel supervising CETA personnel, and that therefore HVFT was in violation of CETA regulations," although plaintiff asserts that during the period in question "there was no CETA regulation, law or policy mandating that it was improper for a CETA paid employee to supervise other CETA employees." Ms. Cook also allegedly "initiated inquiries into the personal life-style and sexual relations" of Mr. Stewart.

1. The nature and precise content of the pejorative comments have not been disclosed to the Court.

Upon filing the complaint in this action on October 17, 1980, plaintiff moved by order to show cause for a preliminary injunction returnable October 27, 1980. Plaintiff requested that defendants be preliminarily enjoined (1) to pay plaintiff $12,500.00 as damages for defendants' unlawful abolition of the two Title II PSE positions, and (2) to pay plaintiff $188,008.80 for the institution and completion of the theatre arts project, or alternatively, to re-evaluate HVFT's application for CETA funding for the theatre arts project. On the return date, the motion for a preliminary injunction was withdrawn by the plaintiff upon a stipulation that plaintiff would submit an application for CETA funding for a "theatre arts" project for the 1980–81 fiscal year, and that defendant Orange County ETA would evaluate the application fairly in the ordinary course of its business.

Defendants assert in support of their motion that plaintiff lacks standing to maintain its claims of discrimination on account of race; that claims under CETA therefore must be dismissed for lack of jurisdiction; that the allegations under 26 U.S.C. §§ 7217 and 6103 fail to state a claim upon which relief can be granted, and that all claims of racial discrimination against Orange County are barred by the special New York statutes of limitations affecting municipal corporations and governmental subdivisions.

Defendants assert, and the Court agrees, that because plaintiff HVFT, as a corporation, has no racial identity, it cannot have been the target of any racial discrimination, and therefore has no standing to maintain its claims under the Civil Rights laws and the Fifth and Fourteenth Amendments.

■ The standing doctrine in federal court comprises both constitutional requirements and prudential limitations. To satisfy the constitutional Article III jurisdictional requirement that a "case or controversy" has been presented to the Court, a plaintiff must show that it has suffered a "distinct and palpable injury," and that a "fairly traceable connection" exists between this injury and the defendants' challenged actions. *Duke Power Co. v. Carolina Environ-*

*mental Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

■ Prudential limitations on standing, founded on considerations of judicial restraint, have also been articulated by the Supreme Court, although the elements of these limitations have not been stated as clearly as have the Article III requirements. In *Data Processing Service v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970), the Supreme Court stated that prudential limitations involved the question "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the [relevant] statute or constitutional guaranty." *See Warth v. Seldin, supra*, at 500–01. More recently, however, the Supreme Court has suggested that plaintiffs need not "demonstrate a connection between the injuries they claim and the constitutional rights being asserted," except in the context of taxpayer suits. *Duke Power Co. v. Carolina Env. Study Group, supra*, at 78–80, 98 S.Ct. at 2633–2634. One prudential limitation on standing has been reiterated in recent cases, however: a plaintiff must assert his own rights and not the rights of third parties, unless the plaintiff can show that exceptional circumstances justify the assertion of the rights of these third parties. *Id.* at 80–81, 98 S.Ct. at 2634–2635.

In deciding whether such special circumstances are present, a Court will consider the relationship of the plaintiff to the third party, as well as whether or not the third party is able to assert his or her own rights. *See Singleton v. Wulff*, 428 U.S. 106, 115–16, 96 S.Ct. 2868, 2874–75, 49 L.Ed.2d 826 (1976).

■ In the instant case, plaintiff quite clearly has asserted that it has been economically injured in its own right by the

defendants' denial and termination of CETA funding.[2]

Whether there is a causal connection between defendants' alleged racial discrimination and this injury is a closer question. Plaintiff apparently contends that the denial and termination of funding would not have occurred absent racial discrimination by the defendants. Because the demands are many and the funds are limited, numerous factors must be involved in any funding decision under CETA. However, we are concerned here only with the well pleaded allegations of fact, and need not go beyond the face of the pleading. For purposes of this motion, although the point is not free from doubt, the Court assumes that a sufficient causal connection between the injury and the alleged racial discrimination has been or could be pleaded so as to survive the motion; this notwithstanding the express findings of the Regional Administrator of CETA, noted above, that the allegations of racial discrimination could not be substantiated.

Defendants' motion to dismiss for lack of standing relies heavily on the following language from *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977):

"Clearly MHDC [plaintiff] has met the constitutional requirements, and it therefore has standing to assert its own rights. Foremost among them is MHDC's right to be free of arbitrary or irrational zoning.... But the heart of this litigation has never been the claim that the Village's decision fails the generous *Euclid* test, recently reaffirmed in *Belle Terre.* Instead it has been the claim that the Village's refusal to rezone discriminates against racial minorities in violation of the Fourteenth Amendment. *As a corpo-*

*ration, MHDC has no racial identity and cannot be the target of the petitioner's alleged discrimination.* In the ordinary case, a party is denied standing to assert the rights of third persons .... But we need not decide whether the circumstances of this case would justify departure from that prudential limitation and permit MHDC to assert the constitutional rights of its prospective minority tenants .... For we have at least one individual plaintiff who has demonstrated standing to assert these rights as his own." (Citations omitted) (Emphasis added).

This Court can find no basis for distinguishing *Arlington Heights* from the instant case. In this case, as in *Arlington Heights*, a plaintiff corporation is asserting that it has been injured by racially discriminatory actions on the part of defendants. Yet, *Arlington Heights* states that a corporation, as a faceless creature of the state, may not assert claims of racial discrimination under the Fourteenth Amendment on its own behalf, and cannot be the "target" of racial discrimination.

*Arlington Heights* apparently holds that the equal protection clause of the Fourteenth Amendment protects individuals, or actual persons having a racial identity, and not, as plaintiff suggests, corporations or artificial persons with an "amorphous" racial identity, or no racial identity. This would be true whether, as here, the corporation produces theatrical events for the delectation of individuals who are members of a racial minority or whether as in *Arlington Heights* the corporation builds housing for such individuals.

Because HVFT's claims under 42 U.S.C. §§ 1981, 1983, 1985 and 2000d are based on underlying allegations that defendants have violated the Equal Protection Clause of the Fourteenth Amendment,[3] the rationale of

---

**2.** Plaintiff's assertion that the concept of "injury" has been expanded to include injuries other than economic, is, of course, correct. *See United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Sierra·Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Data Processing Services v. Camp*, 397 U.S. 150, 157, 90 S.Ct. 827, 831, 25 L.Ed.2d

184 (1969). As plaintiff has clearly alleged an economic injury in this case, this Court need not examine the outer reaches of the injury-in-fact requirement.

**3.** In the complaint, plaintiff alleges, in relevant part that:

*Arlington Heights* applies to these claims, as well as to claims based directly upon the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff, although not citing *Arlington Heights*, attempts to avoid its result by citing cases in which membership organizations or corporations were allowed standing to assert their own rights. In none of those cases, however, was a corporation or membership organization accorded standing to assert that it had suffered injury as a result of racial discrimination in violation of the Equal Protection Clause. *See, e. g., Allee v. Medrano,* 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) (labor union claimed violation of its rights to due process of law and freedom of speech and assembly); *N.A.A. C.P. v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (membership organization claimed its right to freedom of speech and association had been violated).

Plaintiff here cannot avoid the conclusion that in claiming its CETA funding as a subcontractor was denied or terminated on account of racial discrimination, HVFT is really attempting to assert the rights of individual persons belonging to racial minorities.

Although the Supreme Court in *Arlington Heights* left open the issue of third-party standing by corporations claiming racial discrimination on behalf of their members, this Court need not consider whether plaintiff in this case could assert standing to sue on behalf of any aggrieved third parties. This is so because plaintiff has expressly disavowed any attempt to sue on behalf of its "officers, directors, employees, or constituents," and has stated that it "is asserting its own rights and is not relying on any violations that may have also affected the rights of anyone else."[4] Under these circumstances, this Court is bound by the prudential limitations on third-party standing, and plaintiff has not overcome these limitations by stating reasons for the necessity or desirability of its representation of any aggrieved third parties. *See, Singleton v. Wulff,* 428 U.S. 113–114, 96 S.Ct. 2868, 2873–2874, 49 L.Ed.2d 826 (1976).

For these reasons, plaintiff's claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 2000d are dismissed for lack of standing. Rule 12(b)(6), F.R.Civ.P.

Defendants argue that when the claims brought under the Constitution and the Civil Rights laws have been dismissed, the claims brought under CETA must be dismissed for lack of pendent jurisdiction, or, alternatively, for failure to exhaust administrative remedies. In its complaint, HVFT states that its CETA claims are pendent to the constitutional claims; in its brief, however, HVFT implies that independent jurisdiction exists for these claims, but does not cite the jurisdictional predicate.

This Court must first determine the nature of HVFT's claims brought pursuant to CETA. For its third claim pleaded, plaintiff alleges that defendants have violated CETA, "the regulations and directives promulgated thereunder and agreements adopted pursuant thereto," but does not

"71. Defendants have carried on, and in fact are continuing to carry on, a racially discriminatory program and discriminatory actions against the Plaintiff in violation of 42 U.S.C. Sec. 2000d (Title VI of the Civil Rights Act of 1964).
72. The rights sought to be secured in this action are rights secured by Acts of Congress providing for equal rights and for the protection of civil rights, to wit, 42 U.S.C. Sec. 2000d and 42 U.S.C. Sec. 1983.
73. By their actions as described above in this Complaint, the Defendants have violated Plaintiff's rights under 42 U.S.C. Secs. 2000d and 1983 by:
(a) Denying certain benefits to the Plaintiff because of race;

(b) Subjecting the HVFT to different treatment than other CETA sub-contractors because of race;
(c) Using criteria which have subjected the HVFT to discrimination because of race;
(d) Discriminating against the HVFT in a program conducted in a facility partially restored with Federal funds;
(e) Subjecting the HVFT to discriminatory employment and contracting practices in a Federal program intended to provide employment."

4. Quoted from plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss the Complaint, at 2.

specify which provisions of the Act or which regulations have been violated.

Plaintiff does allege that defendant Orange County ETA breached an agreement with HVFT which provided that it would fund the position of restoration trainee in HVFT's church restoration project. This is basically a contract claim. Because the parties in this action all are citizens or residents of New York, there is not complete diversity. Thus there can be no subject matter jurisdiction of this contract claim, unless appended to another claim of which this Court has subject matter jurisdiction.

Our Court of Appeals has held that CETA does not provide for an express or an implied right of action for damages by individual program participants against "prime sponsors" such as the Orange County ETA. *CETA Workers' Organizing Committee v. City of New York*, 617 F.2d 926, 929, 34 (2d Cir. 1980). It follows, *a fortiori*, if the recipients of the training under the Comprehensive Employment and Training Act, those for whose especial benefit the statute was enacted, have no implied right of action against a prime sponsor under the Act, then surely a mere subcontractor or subrecipient, as is plaintiff, cannot state a claim based on any such implied right.

■ To the extent founded on contract the CETA claims must be dismissed for want of subject matter jurisdiction. To the extent founded on a claimed implied action for breach of a statutory duty, they must be dismissed for failure to state a claim.

■ The complaint states that plaintiff's claim for damages for disclosure of HVFT's tax delinquencies is founded on 26 U.S.C. § 7213. Because that section concerns only criminal liability, the Court will treat this portion of the complaint as asserting a claim under § 7217. Plaintiff seeks damages from all defendants except Replogle and Gaskins, because Ms. Cook, while serving as ETA Director of Orange County,

became aware of the fact that HVFT had withheld payroll taxes from its employees and had failed to remit to the Internal Revenue Service. She divulged this fact at a public session of the ETA Advisory Council, a body concerned with the approval or disapproval of subcontractors and the administration of CETA grants.

The information, if true (and it is not alleged to be false), was relevant to the duties of the Advisory Council. Tax monies withheld from employees are trust funds, 26 U.S.C. § 7501; failure to remit can incur serious civil and criminal penalties which may impair the ability of a sponsor or subcontractor to function.[5] That an employer would intentionally divert or fail to remit such withholding taxes suggests a moral indifference to the law, and is arguably relevant to the suitability and competence of the management of a CETA contractor such as plaintiff. The Court finds no wrongdoing on the part of Ms. Cook. Also, this branch of the complaint fails to state a claim.

Section 7217(a) of the Internal Revenue Code, 26 U.S.C. § 7217(a), provides for a civil right of action:

"Whenever any person knowingly, or by reason of negligence, discloses a return or return information (defined in section 6103(b)) with respect to a taxpayer in violation of the provisions of section 6103, such taxpayer may bring a civil action for damages against such person, and the district courts of the United States shall have jurisdiction of any action commenced under the provisions of this section."

The definition of "return information" incorporated by reference from § 6103(b) of Title 26 is arguably sufficient to include the tax liability of HVFT for withheld but unremitted payroll taxes.

However, § 7217(a) by its express terms imposes civil liability only on a person who has disclosed "return information" in "vio-

---

**5.** Section 3403 of the Internal Revenue Code provides that an employer shall be liable for the payment of withholding taxes. Section 6672(a) imposes substantial monetary penalties (up to 100%) for the wilful failure to pay such taxes, and Section 7202 provides that a wilful failure to pay such taxes is a felony, punishable by a fine of not more than $10,000 or imprisonment of not more than five years.

lation of the provisions of section 6103 ...."

Section 6103(a) sets out its "general rule" as follows:

"(a) General rule.—Returns and return information shall be confidential, and except as authorized by this title—

(1) no officer or employee of the United States

(2) no officer or employee of any State or of any local child support enforcement agency who has or had access to returns or return information under this section, and

(3) no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (e)(1)(D)(iii), subsection (m)(4)(B), or subsection (n),

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term 'officer or employee' includes a former officer or employee."

As can be seen, the prohibition against disclosure does not extend to any person, e. g., a journalist, coming into the possession of confidential tax information and disclosing it. This carefully drawn statute, intended to avoid possible First Amendment implications, was not violated by Ms. Cook because she was not an "officer or employee of the United States," nor an "officer or employee of any State or of any local child support enforcement agency," [see § 6103(a)(1), (2)]. Nor did she obtain access to any "return information" in the capacity of a shareholder of HVFT or any corporation [see § 6103(e)(1)(D)(iii)]; nor as an officer of an educational institution for the purpose of collecting student loans [see § 6103(m)(4)(B)], nor as a person processing return information for purposes of tax administration [see § 6103(n)].

Accordingly, because any disclosure of return information by June Cook is not prohibited by § 6103, since she is not within the categories of persons regulated thereby, plaintiff states no claim against her, or

against Heimbach or Orange County, under § 7217.

Defendants' motion to dismiss plaintiff's claim based on public disclosure of plaintiff's tax delinquency is granted pursuant to Rule 12(b)(6), F.R.Civ.P.

Defendant County of Orange has also moved to dismiss the claims brought pursuant to the Civil Rights laws on the ground that these claims are time-barred. In view of the foregoing determinations, this Court need not reach or consider whether the statute of limitations against the County had run before plaintiff filed this action. *See Collins v. Town of Goshen*, 635 F.2d 954 (2d Cir. 1980); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 449 (2d Cir. 1980).

The Clerk shall enter judgment dismissing the Complaint. No costs.

So Ordered.